UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IBRAHIM TOM IBRAHIM, Power
of Attorney for SOFIA YOUHANNA
IBRAHIM; and
SOFIA YOUHANNA IBRAHIM,

Case No. 22-10015

Honorable Sean F. Cox
United States District Court Judge

Plaintiffs,

v.

LIBERTY MUTUAL PERSONAL
INSURANCE COMPANY,

Defendant.
_____/

## ORDER DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an insurance coverage dispute. Plaintiff, Sofia Youhanna Ibrahim ("Sofia"), is a full-time resident of Sweden who owns a rental property located on Parliament Drive, in Sterling Heights, Michigan ("Parliament Drive Property"). Sofia Ibrahim signed a Power of Attorney which gave her cousin, Co-Plaintiff Ibrahim Tom Ibrahim ("Tom"), the authority to manage, maintain, and control the Parliament Drive Property on her behalf. As such, Tom applied for an insurance policy with Defendant, Liberty Mutual Personal Insurance Company ("Liberty Mutual") to cover the Parliament Drive Property.

Liberty Mutual accepted Tom's application and wrote an insurance policy covering the Parliament Drive Property. In November 2020, the Parliament Drive Property caught fire and sustained serious damage, so Tom submitted an insurance claim. While investigating Tom's insurance claim, Liberty Mutual discovered that Tom does not own the Parliament Drive

1

Property, even though he indicated he owns the Property on his insurance application. Citing Tom's misrepresentation, Liberty Mutual rescinded Tom's Policy and has refused to pay his insurance claim.

This matter is before the Court on Liberty Mutual's Motion for Summary Judgment. (ECF No. 16). Pursuant to E.D. Mich. LR 7.1 (f)(2), the Court finds this Motion has been adequately briefed and will rule without hearing. For the reasons set forth below, Liberty Mutual's Motion is **DENIED**. Tom has produced sufficient evidence to create a triable issue of fact whether his misrepresentation was material to Liberty Mutual's decision to insure the Parliament Drive Property.

## BACKGROUND

### A. Procedural Background

On November 29, 2021, Plaintiffs Tom and Sofia initiated this civil action against Liberty Mutual in Michigan state court. The sole allegation in their complaint was that Liberty Mutual improperly denied Tom's insurance claim for the fire at the Parliament Drive Property.

On January 4, 2022, Liberty Mutual removed this case to federal court, properly alleging diversity subject matter jurisdiction. (ECF No. 1).

On December 19, 2022, Liberty Mutual filed the instant Motion for Summary Judgment, claiming that it was entitled to rescind Tom's insurance policy as a matter of law. (ECF No. 16). With respect to summary judgment motions, this Court's practice guidelines are included in the Scheduling Order and provide, consistent with Fed. R. Civ. P. 56 (c) and (e), that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

      b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

      c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 3, ECF No. 9). All parties complied with the Court's practice guidelines for summary judgment motions.

### B. Factual Background

The Parliament Drive Property is a rental property owned by Sofia Ibrahim. (ECF No. 17 ¶ 1). Tom has never held legal title to the property. (ECF No. 19 ¶ 2).

Sofia is unable to personally care for the Parliament Drive Property because she is a full-time resident of Sweden. (ECF No. 18-2 at 2). Sofia relies on her cousin, Tom, to look after the Property. (*See* ECF No. 18-3).

On July 17, 2018, Sofia Ibrahim executed a General Power of Attorney, appointing Tom to act as her attorney-in-fact. Relevant to this case, the Power of Attorney gave Tom the authority to: 1) "deal with any interest [Sofia] may have in real property…" including the right to purchase, sell, and exchange real property; 2) to manage the Parliament Drive Property; 3) to "…pay premiums, start, modify or terminate [insurance] policies…;" and 4) the power to start, defend, or otherwise dispose of all legal proceedings initiated against Sofia. (ECF No. 18-3).

On June 18, 2020, Tom contacted Liberty Mutual and applied for a landlord's policy of insurance for the Parliament Drive Property. (ECF No. 17 ¶ 5). The policy application consisted

of the "Your Landlord Insurance Application" and the "Michigan Property Supplemental Application." (ECF No. 17 ¶ 7).

Question 1 of the "Michigan Property Supplemental Application," asks, "Do you own this residence or will you own this residence in the next 30 days?" (ECF No. 17 ¶ 8). Tom answered "Yes." *Id*.

Tom signed the Michigan Supplemental Application below a disclosure notice that stated, in part, "I understand that misrepresentation of information in my application could void some or all of my coverage." (ECF No. 17 ¶ 9).

Liberty Mutual approved Tom's application and issued a "Libertyguard Deluxe Homeowner's Policy…with Landlord Endorsement…" (the "Policy") to Tom. The Policy went into effect on June 2, 2020.

The Policy contains a "Concealment or Fraud" provision, which reads:

> **2. Concealment or Fraud.** The entire policy will
> be void if, whether before or after a loss, an
> "insured" has:
> (a.) Intentionally concealed or misrepresented
> any material fact or circumstance;
> (b.) Engaged in fraudulent conduct; or
> (c.) Made false statements;
> relating to this insurance.

(ECF No. 16-3 at PageID 327).

On November 30, 2020, a fire occurred at the Parliament Dr. Property. (ECF No. 17 ¶ 15). Tom filed an insurance claim on December 1, 2020. (ECF No. 17 ¶ 16).

4

In response to Tom's claim, Liberty Mutual launched an investigation into the fire. During its investigation, Liberty Mutual discovered that Sofia, not Tom, held legal title to the Parliament Drive Property. (ECF No. 17 ¶ 17).

Citing Tom's misrepresentation, Liberty Mutual refused to pay Tom's claim stemming from the November 2020 fire. (ECF No. 17 ¶ 21).

In in a letter dated September 23, 2021, Liberty Mutual informed Tom that it was rescinding his Policy because of "what are believed to be material misrepresentations in your application." Specifically, the letter stated that "[y]ou indicated that you owned the insured property. Our investigation has revealed this is not true." (ECF No. 16-2 PageID 295).

Liberty Mutual completed its recission of the Policy by refunding Tom $2,536.75—the full Policy premium. Tom then filed this suit, arguing Liberty Mutual impermissibly denied his insurance claim and rescinded his Policy.

## STANDARD OF DECISION

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

Further, "[i]t is an error for the district court to resolve credibility issues against the nonmovant . . .." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). "In effect, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true . . .." *Id*. (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

**ANALYSIS**

Liberty Mutual makes two arguments as to why it is not bound to cover damages sustained at the Parliament Drive Property from the November 2020 fire. (ECF No. 16 at 3). First, Liberty Mutual argues that under basic principles of contract law, it properly rescinded its insurance contract with Tom. (ECF No. 16 at 3). Second, Liberty Mutual argues that Tom's Policy was voided "by the plain language of the Concealment or Fraud provision in the Liberty Mutual Policy." (ECF No. 16 at 9). The Court will address each argument in turn.

1. **Recission of Liberty Mutual's Policy**

A triable issue of fact exists as to whether Liberty Mutual was justified in rescinding the Tom's Policy. A triable issue exists because the record contains sufficient evidence to question whether the misrepresentation on Tom's application was material to Liberty Mutual's decision to issue the Policy.

Insurance policies are subject to the same principles of construction as any other contract. *Bazzi v. Sentinel Ins. Co.*, 502 Mich. 390, 399 (2018). When a provision of an insurance policy is not mandated by statute, "the rights and limitations of the coverage are entirely contractual…." *See Rory v. Continental Ins. Co.,* 473 Mich. 457, 465-66 (2005). As Such, common law defenses like fraud, duress, and waiver, may be invoked to avoid enforcement of an insurance policy. *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 554 (2012).

In the instant matter, Liberty Mutual asserts fraud as a defense to its obligation to honor Tom's Policy. (ECF No. 16 at 1). More specifically, Liberty Mutual seeks recission of the Policy to remedy the alleged fraudulent misrepresentation Tom made on his insurance application. (ECF No. 16 at 3).

Rescission is an equitable remedy that abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made. *Bazzi*, 502 Mich. at 409 (2018).

It is well-settled that a material misrepresentation made in an application for insurance entitles the insurer to rescind the policy. *Lash v. Allstate Ins. Co.,* 210 Mich. App. 98, 103, 532 N.W.2d 869, 872 (1995). Even if a misrepresentation is innocent, recission is justified so long as the insurer relied on it. *Peatross v. Liberty Mut. Pers. Ins. Co.*, 575 F. Supp. 3d 887, 891 (E.D. Mich. 2021), *aff'd*, No. 22-1022, 2022 WL 17169008 (6th Cir. Nov. 22, 2022).

In other words, Liberty Mutual is entitled to rescind the Policy if it can show: 1) that Tom made a misrepresentation on his insurance application; and 2) that the misrepresentation was material.

### a. Misrepresentation

The alleged misrepresentation at issue is whether Tom was an "owner" of the Parliament Drive Property when he applied for insurance. The Court finds Tom was not an "owner" and thus made a misrepresentation on his insurance application.

It is undisputed that Sofia holds legal title of the Parliament Drive Property, and that Tom has never held title to the Property. (ECF No. 17 ¶ 1, 2). It is further undisputed that Tom indicated that he owned the Parliament Drive Property on his insurance application. (ECF No. 17

¶ 8). Liberty Mutual contends these facts make clear that Tom misrepresented himself as an "owner" on his insurance application. (ECF No. 16 at 6).

Tom argues that, despite his lack of record ownership of the Parliament Drive Property, he is an "owner" under Michigan common law. Tom claims that he should be considered an "owner" because he had "possession, control, and dominion" over the Parliament Drive Property when he applied for insurance. (ECF No. 18 at 9).

In support of his definition of "ownership," Tom relies on *Twichel v. MIC Gen. Ins. Corp.*, 469 Mich. 524 (2004). In *Twichel*, the Michigan Supreme Court was tasked to determine whether a driver in a fatal crash was entitled to either personal protection or uninsured motorist benefits. *Twichel*, 469 Mich. at 524. The driver's entitlement to coverage centered on whether he was the "owner" of the vehicle he crashed. *Id.* at 526.

Using common law principles of contract interpretation, the Supreme Court determined that the driver "owned" his vehicle for purposes of uninsured motorist benefit eligibility. *Id.* at 535. Even though legal title of the vehicle had not yet transferred to the driver, the Court still found he was the "owner" because he had possession, control, and dominion over the vehicle at the time of the crash. *Id*.

Tom argues that, under *Twichel*, he was an owner of the Parliament Drive Property because he "exhibited possession, dominion, and control by repairing and maintaining the property, hiring vendors to help care for the property, leasing the property, and notably by insuring the property." Tom further argues he was the owner of the Property because he was designated as the "title holder's agent under durable power of attorney," which gave him the authority to sell or otherwise convey the Property. (ECF No. 18 at 9).

8

The *Twichel* definition of "ownership" does not apply to Tom for two reasons. First, unlike the driver in *Twichel*, Tom did not have unfettered possession, dominion, or control of the Parliament Drive Property. Tom's control is derived from a Power of Attorney signed by, Sofia, the actual title holder. (ECF No. 18-3). The Power of Attorney merely gives Tom the authority to manage the Parliament Drive Property on Sofia's behalf. Sofia could revoke Tom's authority at any time.

Second, the driver in *Twichel* demonstrated an intent to obtain legal title of the car he crashed. The driver paid part of the car's purchase price and planned to obtain legal title when he paid the remainder of the purchase price. *Id*. at 526. The driver's intent to permanently possess the car was an important factor in the Court determining he was the "owner." *See Id*. at 535. There is no evidence that Tom demonstrated intent to obtain legal title to the Parliament Drive Property.

Therefore, Tom was not an "owner" of the Parliament Drive Property when he applied for insurance. Tom made a misrepresentation on his insurance application.

  **b. Materiality**

The Court must next determine whether Tom's misrepresentation was material. There is a triable issue of fact whether Tom's misrepresentation was material.

A fact or representation in an application for insurance is material when communication of it would have resulted in an insurer rejecting the policy application or charging an increased premium. *Peatross,* 575 F. Supp. 3d at 891. If Liberty Mutual did not actually rely on Tom's ownership status when it decided to issue the Policy, however, then his misrepresentation was not material and Liberty Mutual is not entitled to recission.

Obviously, Liberty Mutual claims Tom's misrepresentation was material. (ECF No. 16 at 6). In support of its claim, Liberty Mutual produced an affidavit from Randall Lawrence-Hurt. (ECF No. 16-2). Lawrence-Hurt is the lead compliance analyst for Liberty Mutual. *Id.* ¶ 4. In his affidavit, Lawrence-Hurt stated that Tom misrepresenting that he owned the Parliament Drive Property was integral to Liberty Mutual's decision to issue the Policy, and that Liberty Mutual would not have issued the Policy had it known Tom was not the owner of the Parliament Drive Property. *Id.* ¶ 10, 11.

Courts often find that affidavits like the one offered by Lawrence-Hurt constitute sufficient evidence to warrant summary judgment. *See e.g. Lake States Ins. Co. v. Wilson*, 231 Mich. App. 327 at n.5 ("Lake States submitted an affidavit from its underwriter stating that, pursuant to Lake States' guidelines, had it known of other drivers ... it would not have issued a policy."); *Hatcher v. Nationwide Prop. & Cas. Ins. Co.*, 34 F.Supp.3d 704, 711 (E.D. Mich. 2014) ("Defendant has provided an unopposed affidavit from its Personal Lines Underwriting Manager stating that '[t]he status of the property taxes is material to Nationwide's decision whether to insure the property' and that 'Nationwide would not have issued the policy had it known....'"); *Nationwide Prop. & Cas. Ins. Co. v. Brown*, 260 F. Supp. 3d 864, 876 (E.D. Mich. 2017) (finding insurance company relied on insured's misrepresentations because of an affidavit from insurance company's underwriter stating insurer "would not have issued the policy has it understood these representations to be false").

Here, however, Tom has offered evidence to combat Lawrence-Hurt's Affidavit. Tom offered a report created by Traci Johnson—a member of Liberty Mutual's Special Investigation Unit. (ECF No. 18-2).

During her investigation of the November 2020 fire, Ms. Johnson noted a conversation she had with Michael Meyer, a Liberty Mutual sales agent. Meyer indicated that Liberty Mutual would be allowed to write an insurance policy for Tom, even if he was not the owner of the Property, so long as he had an active power of attorney. *Id*. at 36.[1]

The report Tom produced makes this case look different than those cited by Liberty Mutual. For example, in *Purry v. State Farm Fire & Cas. Co.*, 350 F. Supp. 3d 631, 636 (E.D. Mich. 2018), Judge Berg granted recission of a property insurance policy because the insured misrepresented that she was the owner of the property to be insured. *Id*. at 635. The court found the misrepresentation was material, in part, because the insurer produced an affidavit stating applications from non-homeowners are ineligible for coverage. *Id*. at 636.

*Purry* is distinguishable from this case because the affidavit relied on by the court left no room for discretion. In *Purry*, if an insurance applicant was not the owner of the property they desired to insure, they were *automatically* ineligible for coverage. In the instant case, Liberty Mutual is permitted to write policies for applicants who are non-owners, so long as they have a valid power of attorney. (*See* ECF No. 18-2).

*Romeo's Party Store, Inc. v. Capitol Indem. Corp.*, No. 15-11835, 2016 WL 7474915 (E.D. Mich. Dec. 29, 2016), another case relied on by Liberty Mutual, is also inapposite. In *Romeo*, Judge Berg again allowed an insurer to rescind a property insurance policy because the insured misrepresented that it was the property's owner. *Id*. at 2. The court found the insured's

---

[1] Liberty Mutual argues the report cited by My. Ibrahim should not be considered because it is hearsay. (ECF No. 21 at 4). Hearsay may not be considered on a motion for summary judgment. *Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012). However, Ms. Johnson's report, and her conversations with other Liberty Mutual employees are not hearsay under Fed. R. Evid. 801(d)(2)(d).

misrepresentation was material because the insurer produced an affidavit that it would not have issued a policy had it known the insured was not the owner of the property. *Id*.

*Romeo's Party Store* is unlike this case because the insurer's affidavit was unopposed. *Id*. Here, Tom has produced evidence to combat Liberty Mutual's affidavit.

The Court notes that Ms. Johnson's report does not directly contradict the affidavit offered by Liberty Mutual. Ms. Johnson's report evinces that Liberty Mutual *could* write a policy to a non-owner with a power of attorney—not that it *would*. Liberty Mutual's affidavit states that it would not have issued Tom's specific Policy had it known he was not the owner. Nonetheless, the statements in Ms. Johnson's investigative report call into question whether Liberty Mutual sincerely relied on Tom's ownership status when deciding to issue the Policy.

At summary judgment, it is not the Court's duty to weigh the credibility of each Party's evidence. *CenTra, Inc.* 538 F.3d at 412. The Court holds that because Plaintiffs have produced evidence that Liberty Mutual *could* write an insurance policy for a non-owner, a triable issue of fact exists. A jury should determine whether Tom's misrepresentation was material—that is, whether Liberty Mutual would have issued Tom's Policy had it known he did not own the Parliament Drive Property.

### 2. "Concealment or Fraud" Provision of Liberty Mutual's Policy

Liberty Mutual also Argues that Tom's insurance claim is "barred by the plain language of the concealment or fraud provision in the Liberty Mutual Policy." (ECF No. 16 at 9).

As an initial matter, it is not clear what is contained in the Fraud or Concealment Provision of Tom's Policy. In Plaintiffs' and Defendant's briefs, the Parties cite a provision that reads as follows:

> **2. Concealment or Fraud**
> a. Under Section I - Property Coverages:

12

> (1) With respect to loss caused by fire, we do not provide coverage to the insured who has:
> (a) Intentionally concealed or misrepresented any material fact or circumstances;
> (b) Engaged in fraudulent conduct; or
> (c) Made false statements;
> relating to this insurance.

(ECF No. 16 at 10); (ECF No. 18 at 11)

However, the copy of Tom's Policy the parties submitted to the Court contains a "Fraud or Concealment Provision" that reads:

> **2. Concealment or Fraud.** The entire policy will be void if, whether before or after a loss, an "insured" has:
> (a.) Intentionally concealed or misrepresented any material fact or circumstance;
> (b.) Engaged in fraudulent conduct; or
> (c.) Made false statements;
> relating to this insurance.

(ECF No. 16-3 at PageID 328).

Regardless of which provision is correct, subsections (a), (b), and (c), are the same in both provisions, so the Court's analysis will apply regardless of which provision is accurate.

Turning now to the substance of Liberty Mutual's argument—the Court finds that Liberty Mutual's Policy language argument is duplicative of its recission argument, at least with respect to subsections (a) and (b).[2]

---

[2] The Court will not analyze the impact of Section (c) of the Concealment or Fraud provision. Liberty Mutual cites no authority interpreting a provision like section (c). Nor does Liberty Mutual address the impact of section (c) in its brief.

Subsection (a) of the Policy's Concealment or Fraud provision voids the Policy (or bars the insured's claim, depending on which provision above is correct) if the insured misrepresents a material fact. (ECF No. 16-3 PageID 327). Subsection (b) produces the same result if the insured engages in fraudulent conduct. *Id*. For conduct to be fraudulent, an actor must make a material misrepresentation. *See Petfreedom.com, L.L.C. v. Net Generation, Inc.*, No. 284285, 2009 WL 2382430, at *3 (Mich. Ct. App. Aug. 4, 2009) (stating the elements of a fraud).

In other words, Tom must have made a material representation to violate section (a) or (b) of the Concealment or Fraud provision of his Policy, and he must have done the same for Liberty Mutual to rescind the contract.

Therefore, the Court's materiality analysis with respect to Liberty Mutual's recission claim is equally applicable here. A triable issue of fact exists whether Tom's misrepresentation was material in violation of sections (a) and (b) of the Policy because it is unclear Liberty Mutual actually relied on his misrepresentation.

The caselaw cited by Liberty Mutual in this section of its brief, like that cited in the recission section, does not show that Tom's misrepresentation was material. *Martin v. Farm Bureau Gen. Ins. Co. of Michigan*, No. 275261, 2008 WL 1807940 (Mich. Ct. App. Apr. 22, 2008), the main case cited by Liberty Mutual, contains almost no discussion about when a misrepresentation is material.

In *Martin*, the insurer's policy contained a concealment or fraud provision nearly identical to that used by Liberty Mutual but the court did not analyze what would make a misrepresentation material under the policy language. *See Id*. at 2-3.

The second case relied on by Liberty Mutual, *Hatcher v. Nationwide Prop. & Cas. Ins. Co.*, 34 F. Supp. 3d 704 (E.D. Mich. 2014), *aff'd.* 610 F. App'x 507 (6th Cir. 2015), is equally

unpersuasive. In *Hatcher*, an insurer issued a policy with a fraud and concealment provision nearly identical to the one used by Liberty Mutual. *Id*. at 708. The fraud and concealment provision entitled the insurer to void its policy if the unsured "knowingly or unknowingly concealed, misrepresented or omitted any material fact… at the time the application was made…." *Id*.

Based on the policy language, the court held the insurer may void the insured's policy because the insured made a material misrepresentation on their application. *Id*. The court found the insured's misrepresentation was material because the insurer produced an affidavit stating that it would not have issued the policy had it known of the insured's misrepresentation. *Id*.

*Hatcher* is unlike the instant case because the insurer's affidavit in *Hatcher* was unopposed. *Id*. at 709. As discussed in the recission section, Tom produced evidence to contradict Liberty Mutual's affidavit. Tom's counterevidence calls into question whether his misrepresentation was material to Liberty Mutual's decision to issue the Policy. Liberty Mutual may not have relied on Tom's ownership status when issuing the policy because it was allowed write policies for non-owners so long as they had a valid power of attorney. Therefore, a jury should determine whether Tom's misrepresentation was material.

## CONCLUSION

For the reasons discussed above, **IT IS SO ORDERED** that Liberty Mutual's Motion for Summary Judgment is **DENIED**. Tom produced sufficient evidence to create a dispute of fact. A reasonable jury could find that Liberty Mutual is not entitled to recission or to void the Policy because Tom's misrepresentation was not material. That is, a reasonable jury could find Liberty Mutual did not actually rely on Tom's ownership status when deciding to issue the Policy because it can issue policies to non-owners with a valid power of attorney.

**IT IS SO ORDERED.**

                s/Sean F. Cox
                Sean F. Cox
                United States District Judge

Dated: March 24, 2023

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 24, 2023, by electronic and/or ordinary mail.

                s/Jennifer McCoy
                Case Manager